ORIGINAL

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUL 07 2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :

        - v. -                    :     16 Cr. ___ (___)

JAMES GRANT,                       :
  a/k/a "Jimmy Grant,"
MICHAEL HARRINGTON, and             **16 CRIM   468**
JEREMY REICHBERG,                  :
  a/k/a "Jeremiah Reichberg,"
  a/k/a "Yermy Reichberg,"        :

       Defendants.             :

- - - - - - - - - - - - - - - - - x

**INDICTMENT**

### COUNT ONE
(Conspiracy to Commit Honest Services Wire Fraud)

The Grand Jury charges:

#### Relevant Individuals

1.    MICHAEL HARRINGTON, the defendant, has been a member of the New York City Police Department (the "NYPD") since 1986. Between October 2012 and May 2013, HARRINGTON was an Inspector assigned to Patrol Borough Brooklyn North. Between May 2013 and November 2014, HARRINGTON was a Deputy Chief assigned as the Executive Officer in the Chief of Department's Office, and in that capacity was second-in-command in that office, which was located at NYPD headquarters at One Police Plaza in downtown Manhattan. The Chief of Department's Office supervises all uniformed police officers in the NYPD and is responsible for all uniformed operations, having oversight over other bureaus such as community affairs,

JUDGE WOODS

patrol, transportation, housing, transit, and detectives. As Executive Officer, HARRINGTON's responsibilities included assuming command and performance functions for the Chief of Department in his absence; supervising the performance of administrative functions; training, planning, and personnel; and adjudicating disciplinary issues. Following his position as Executive Officer, between November 2014 and April 2016, HARRINGTON was a Deputy Chief assigned to the NYPD's Housing Bureau, where he had oversight of, among other things, policing of the City's public housing units, including crime reduction and quality of life issues.

2.   JAMES GRANT, a/k/a "Jimmy Grant," the defendant, was a member of the NYPD from 1996 until 2016. For most of his career until 2014, GRANT was assigned to various posts in Brooklyn, New York, including, from December 2011 through June 2014, as a Captain and the Commanding Officer of the 72nd Precinct. From June 2014 through April 2015, GRANT was a Deputy Inspector and the Commanding Officer of the 19th Precinct on the Upper East Side of Manhattan. In that position, GRANT was the highest ranking NYPD official in the 19th Precinct and supervised approximately 240 NYPD officers.

3.   JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendant, resides in Borough Park, Brooklyn, and has described himself in meetings with the NYPD and others as a "community liaison" to the NYPD.

4. CW-1 is a businessman in the real estate industry who is a cooperating witness for the Government. CW-1 has pleaded guilty to conspiring to commit honest services fraud in connection with, among other conduct, the honest services wire fraud scheme described herein, and is providing information to the Government in the hope of obtaining leniency when he is sentenced.

## Background

5. Beginning in or about 2009, and up to and including in or about 2015, JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendant, engaged in a long-running bribery scheme in which he provided numerous members of the NYPD, including JAMES GRANT, a/k/a "Jimmy Grant," and MICHAEL HARRINGTON, the defendants, with substantial bribes in the form of personal and financial benefits, including paying for uniforms, jewelry, business cards, expensive meals, and other luxury items. In exchange, REICHBERG repeatedly called upon his connections in the NYPD, including GRANT and HARRINGTON, for official action, as opportunities arose, both for himself and for members of his community, particularly in Borough Park, Brooklyn. REICHBERG's bribery of high-ranking members of the NYPD enabled him not only to obtain such official benefits on an as-needed basis, but also gave him considerable influence over internal NYPD affairs, including

personnel decisions such as the promotion of certain favored NYPD officers.

6. In or around 2011 to 2012, JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendant, began spending significant time with CW-1, and introduced CW-1 to his connections inside the NYPD, including JAMES GRANT, a/k/a "Jimmy Grant," and MICHAEL HARRINGTON, the defendants. Following these introductions, CW-1 began spending time with GRANT, HARRINGTON, and other NYPD officials, and, along with REICHBERG, CW-1 spent large sums of money paying for personal and financial benefits for GRANT, HARRINGTON, and others, including paying for flights, hotel rooms, prostitutes, expensive meals, home improvements, and prime seats to sporting events, among other things. From in or about 2012 up through and including in or about 2015, CW-1 and REICHBERG paid a total of well more than $100,000 for the benefit of GRANT and HARRINGTON, and paid additional sums for the benefit of other NYPD officials.

7. In exchange for these benefits, JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendant, and CW-1 were effectively able to have JAMES GRANT, a/k/a "Jimmy Grant," and MICHAEL HARRINGTON, the defendants, on call - ready and willing to use their official authority within the NYPD to provide assistance to REICHBERG and CW-1 on an as-needed basis. Among the

4

official actions that GRANT and/or HARRINGTON took at the request of CW-1 and/or REICHBERG were providing police escorts for them and their friends, providing assistance with private disputes and investigations, providing police resources for security at religious sites and events, helping to get out of tickets or other infractions, and providing special access to parades and other cultural events, among other official favors.

### Financial Benefits Provided to GRANT

8. Financial benefits offered and paid for by JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendant, and/or CW-1, to JAMES GRANT, a/k/a "Jimmy Grant," the defendant, in exchange for official action included, but were not limited to: (a) improvements to the exterior of GRANT's house worth approximately $6,000; (b) the upgrading of GRANT's watch to a more expensive brand; (c) a video game system for GRANT's children and a piece of jewelry for GRANT's wife; (d) the replacement of windows at GRANT's house worth approximately $6,000; (e) an all expenses paid trip to Las Vegas on a private jet during which a prostitute accompanied GRANT, REICHBERG and others on the trip; and (f) hotel accommodations in Rome, Italy.

### Official Actions Taken By GRANT

9. JAMES GRANT, a/k/a "Jimmy Grant," the defendant, performed numerous official acts for JEREMY REICHBERG, a/k/a

5

"Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendant, and CW-1, in exchange for the benefits bestowed on him (GRANT) by REICHBERG and CW-1. Examples of such official acts included the following services provided to REICHBERG, CW-1, and their associates: (a) providing police escorts; (b) providing official NYPD assistance with private disputes and investigations; (c) help with getting out of tickets or other infractions; (d) assistance with applying for gun licenses; and (e) providing special access to parades and other cultural events.

### Financial Benefits Provided to HARRINGTON

10. Financial benefits offered and paid for by JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendant, and/or CW-1, to MICHAEL HARRINGTON, the defendant, in exchange for official action included, but were not limited to: (a) obtaining thousands of dollars in work for a security company, which HARRINGTON unofficially helped manage, and which was run in part by HARRINGTON's family; (b) hotel accommodations for HARRINGTON and family members in Chicago, Illinois; (c) expensive lunches and dinners; (d) prime tickets to numerous sporting events; and (e) a video game system for HARRINGTON's children.

### Official Acts Provided by HARRINGTON

11. MICHAEL HARRINGTON, the defendant, performed numerous official acts for JEREMY REICHBERG, a/k/a "Jeremiah

Reichberg," a/k/a "Yermy Reichberg," the defendant, and CW-1, in exchange for the benefits bestowed on him (HARRINGTON) by REICHBERG and CW-1. Examples of such official acts included, but were not limited to, the following: (a) providing police escorts; (b) providing official NYPD assistance with private disputes and investigations; (c) providing police resources for security at religious sites and events; and (d) providing special access to parades and other cultural events.

## Statutory Allegations

12. From in or about 2012, up to and including in or about 2015, in the Southern District of New York and elsewhere, JAMES GRANT, a/k/a "Jimmy Grant," MICHAEL HARRINGTON, and JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendants, and others known and unknown, including CW-1, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1343 and 1346.

13. It was a part and an object of the conspiracy that JAMES GRANT, a/k/a "Jimmy Grant," MICHAEL HARRINGTON, and JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendants, and others known and unknown, including CW-1, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the NYPD and the people of the City of New York of their intangible right to the honest services

of HARRINGTON and GRANT, who were high-ranking NYPD officials, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, REICHBERG and CW-1 provided personal and financial benefits, including through the use of interstate wires, worth tens of thousands of dollars to GRANT and HARRINGTON in exchange for official actions taken by GRANT, HARRINGTON, and other members of the NYPD at GRANT and HARRINGTON's direction.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Honest Services Wire Fraud: Harrington and Reichberg)

The Grand Jury further charges:

14. The allegations contained in paragraphs 1 to 11 of this Indictment are repeated and realleged as if fully set forth herein.

15. From in or about 2009, up to and including in or about 2015, in the Southern District of New York and elsewhere, MICHAEL HARRINGTON, JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendants, and CW-1, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the NYPD and the people of the City of New York of their intangible right to the honest services

8

of HARRINGTON, who was a high-ranking NYPD official, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, REICHBERG and CW-1 provided personal and financial benefits, including through the use of interstate wires, worth tens of thousands of dollars to HARRINGTON in exchange for official action taken by HARRINGTON and other members of the NYPD at HARRINGTON's direction.

(Title 18, United States Code, Sections 1343, 1346 and 2.)

## COUNT THREE
### (Honest Services Wire Fraud: Grant and Reichberg)

The Grand Jury further charges:

16. The allegations contained in paragraphs 1 to 11 of this Indictment are repeated and realleged as if fully set forth herein.

17. From in or about 2009, up to and including in or about 2015, in the Southern District of New York and elsewhere, JAMES GRANT, a/k/a "Jimmy Grant," and JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendants, and CW-1, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the NYPD and the people of the City of New York of their intangible right to the honest services of GRANT, who was a high-ranking NYPD official, did transmit

9

and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, REICHBERG and CW-1 provided personal and financial benefits, including through the use of interstate wires, worth tens of thousands of dollars to GRANT in exchange for official action taken by GRANT and other members of the NYPD at GRANT's direction.

(Title 18, United States Code, Sections 1343, 1346 and 2.)

## COUNT FOUR
### (Conspiracy to Pay and Receive Bribes and Gratuities)

The Grand Jury further charges:

18.  The allegations contained in paragraphs 1 to 11 of this Indictment are repeated and realleged as if fully set forth herein.

19.  From in or about 2012, up to and including in or about 2015, in the Southern District of New York and elsewhere, JAMES GRANT, a/k/a "Jimmy Grant," MICHAEL HARRINGTON, and JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendants, and others known and unknown, including CW-1, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Section 666.

20.  It was a part and an object of the conspiracy that JAMES GRANT, a/k/a "Jimmy Grant," and MICHAEL HARRINGTON, the

10

defendants, agents of a local government agency, to wit, the NYPD, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept anything of value from a person, to wit, JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendant, and CW-1, intending for GRANT and HARRINGTON to be influenced and rewarded in connection with a business, transaction, and series of transactions of such local government agency involving a thing of value of $5,000 and more, while the NYPD was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(1)(B), to wit, GRANT and HARRINGTON solicited and accepted personal and financial benefits worth tens of thousands of dollars from REICHBERG and CW-1, in exchange for, and as a reward for, official action taken by GRANT and HARRINGTON and other members of the NYPD at GRANT and HARRINGTON's direction.

21.   It was further a part and an object of the conspiracy that JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendant, working with CW-1, did corruptly give, offer, and agree to give a thing of value to a person, to wit, JAMES GRANT, a/k/a "Jimmy Grant," and MICHAEL HARRINGTON, the defendants, with the intent to influence and reward an agent of a local government

agency, to wit, the NYPD, in connection with a business, transaction, and series of transactions of such local government agency, involving a thing of value of $5,000 and more, while such local government agency was in receipt of, in a one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(2), to wit, REICHBERG and CW-1 provided personal and financial benefits worth tens of thousands of dollars to GRANT and HARRINGTON in exchange for official action taken by GRANT, HARRINGTON, and other members of the NYPD at GRANT and HARRINGTON's direction.

## Overt Acts

22. In furtherance of the conspiracy and to effect the illegal objects thereof, JAMES GRANT, a/k/a "Jimmy Grant," MICHAEL HARRINGTON, and JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendants, committed or caused to be committed the following overt acts, among others, in the Southern District of New York and elsewhere:

   a. In or about 2013, REICHBERG and CW-1 paid for improvements to the exterior of GRANT's house worth approximately $6,000.

   b. On Christmas day in 2013, REICHBERG and CW-1 drove to GRANT and HARRINGTON's homes and gave them video game systems for

12

their children.

        c.    Between in or about 2014 and in or about 2015, GRANT helped REICHBERG and CW-1 in their efforts to obtain gun licenses, including on or about January 13, 2015, when GRANT instructed REICHBERG regarding how to manufacture a fake employment letter that would enable CW-1 to obtain a full-carry gun license.

        d.    On numerous occasions between in or about 2012 and in or about 2014, GRANT provided REICHBERG and CW-1 with police escorts.

        e.    In or about 2014, REICHBERG and CW-1 arranged for, and paid for, hotel accommodations for HARRINGTON and family members in Chicago, Illinois.

        f.    Between in or about 2014 and in or about 2015, REICHBERG obtained business, amounting to tens of thousands of dollars, for a private security company run in part by HARRINGTON's family and which HARRINGTON unofficially helped manage.

        g.    In or about January 2015, HARRINGTON agreed to facilitate an arrest for REICHBERG, by using the security company referenced in paragraph 22(f) to surveil a suspected criminal and by using the NYPD to arrest him when he was found.

        (Title 18, United States Code, Section 371.)

## COUNT FIVE

**(Payment of Bribes and Gratuities: Reichberg)**

The Grand Jury further charges:

23. The allegations contained in paragraphs 1 to 11 and 21 of this Indictment are repeated and realleged as if fully set forth herein.

24. From in or about 2009, and up to and including in or about 2015, in the Southern District of New York and elsewhere, JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendant, corruptly gave, offered, and agreed to give a thing of value to a person, with the intent to influence and reward an agent of a local government agency, to wit, the NYPD, in connection with a business, transaction, and series of transactions of such local government agency, involving a thing of value of $5,000 and more, while such local government agency was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, REICHBERG and CW-1 provided personal and financial benefits worth tens of thousands of dollars to JAMES GRANT, a/k/a "Jimmy Grant," and MICHAEL HARRINGTON in exchange for, to influence, and to reward official action taken by GRANT and HARRINGTON and other members of the NYPD at GRANT and HARRINGTON's direction.

14

(Title 18, United States Code, Sections 666(a)(2) and 2.)

## COUNT SIX

### (Receipt of Bribes and Gratuities: Harrington)

The Grand Jury further charges:

25. The allegations contained in paragraphs 1 to 11 and 21 of this Indictment are repeated and realleged as if fully set forth herein.

26. From in or about 2009, and up to and including in or about 2015, in the Southern District of New York and elsewhere, MICHAEL HARRINGTON, the defendant, being an agent of a local government agency, to wit, the NYPD, corruptly solicited and demanded for the benefit of any person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series or transactions of such local government agency involving anything of value of $5,000 and more, while such local government agency was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, HARRINGTON accepted personal and financial benefits worth tens of thousands of dollars from REICHBERG and CW-1, in exchange for and as a reward for official action taken by HARRINGTON and other members of the NYPD at HARRINGTON's direction.

15

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT SEVEN

### (Receipt of Bribes and Gratuities: Grant)

The Grand Jury further charges:

27. The allegations contained in paragraphs 1 to 11 and 21 of this Indictment are repeated and realleged as if fully set forth herein.

28. From in or about 2009, up to and including in or about 2015, in the Southern District of New York and elsewhere, JAMES GRANT, a/k/a "Jimmy Grant," the defendant, being an agent of a local government agency, to wit, the NYPD, corruptly solicited and demanded for the benefit of any person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series or transactions of such local government agency involving anything of value of $5,000 and more, while such local government agency was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, GRANT accepted personal and financial benefits worth tens of thousands of dollars from REICHBERG and CW-1, in exchange for and as a reward for official action taken by GRANT and other members of the NYPD at GRANT's direction.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

**FORFEITURE ALLEGATION**

29. As a result of committing one or more of the offenses alleged in Counts One, Two, Three, Four, Five, Six, and Seven of this Indictment, JAMES GRANT, a/k/a "Jimmy Grant," MICHAEL HARRINGTON, and JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to one or more of the offenses alleged in Counts One, Two, Three, Four, Five, Six, and Seven of this Indictment.

**Substitute Asset Provision**

30. If any of the above-described forfeitable property, as a result of any act or omission of JAMES GRANT, a/k/a "Jimmy Grant," MICHAEL HARRINGTON, and JEREMY REICHBERG, a/k/a "Jeremiah Reichberg," a/k/a "Yermy Reichberg," the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

           (Title 18, United States Code, Section 981,
       Title 21, United States Code, Section 853, and
       Title 28, United States Code, Section 2461.)

FOREPERSON

PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JAMES GRANT,
a/k/a "Jimmy Grant,"
MICHAEL HARRINGTON, and
JEREMY REICHBERG,
a/k/a "Jeremiah Reichberg,"
a/k/a "Yermy Reichberg,"

Defendants.

**INDICTMENT**

16 Cr. ___ (___)

(Title 18, United States Code, Sections 371, 666, 1343, 1346, 1349 and 2.)

_____          _____
  Foreperson.                         PREET BHARARA
                                      United States Attorney.

Deputy

July 7, 2016
Filed Indictment case assigned to Judge Woods
U.S.M.J., Debra Freeman