# Hafetz & Necheles llp

ATTORNEYS AT LAW

10 East 40th Street, 48th Floor
NEW YORK, N.Y. 10016
TELEPHONE: (212) 997-7400
TELECOPIER. (212) 997-7646

April 6, 2018

**VIA E-MAIL and ECF**
Honorable Gregory H. Woods
United States District Judge
United States District Court
500 Pearl Street
New York, NY 10007

Re:    *United States v. Grant and Reichberg*, 16 Cr. 468 (GHW)

Dear Judge Woods:

As we explained in Court yesterday, defense counsel informed the prosecutors that Mr. Reichberg asserts marital privilege and that Government agents may not review communications between Mr. Reichberg and his wife, Rachel Reichberg, contained in seized devices or emails. In response the Government wrote in a letter dated April 4, 2018:

> On March 15, 2018, several weeks into our review of the final outstanding Reichberg Electronic Device, Subject Device-19, you requested that a taint team be imposed to screen materials on Subject Device-19 for potential attorney-client privileged communications, as well as for confidential marital communications. We promptly conducted a review, using taint procedures, for any attorney-client communications and found none. We have evaluated your request that a taint team be imposed to screen out potential confidential marital communications, and determined that such a step is not necessary in this case.
>
> Communications subject to the confidential marital communication privilege can be reviewed by the prosecution team.  This privilege is a purely evidentiary one, and does not present the same constitutional concerns as may be presented in other contexts.  *See, e.g.*, *United States v. Lefkowitz*, 618 F.2d 1313, 1318 n.8 (9th Cir. 1980); *United States v. Squillacote*, 221 F.3d 542, 561 (4th Cir. 2000). Spousal communications that appear unresponsive to the warrant have been or will be designated as such.  Those that appear responsive will likewise be set aside if, on further review, the privilege applies.

Based on this letter, it appears that the Government has disregarded the defendant's assertion of spousal privilege and is reviewing the spousal communications.  This is improper and we ask that Your Honor order the prosecutors to immediately cease this illegal conduct and

1

HAFETZ & NECHELES LLP

that no member of the Government, whether they are part of the "prosecution team" or not, review these communications.

### 1.    The Marital Privilege Protects All Confidential Marital Communications

Contrary to the Government's position, the federal courts have clearly recognized *two* different types of marital privilege, one of which applies to testimony and the second of which is a non-testimonial privilege.  The first is known as the adverse testimony privilege and the second is known as the confidential marital communications privilege.  *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 157 (S.D.N.Y. 2011).

#### A.    Adverse Spousal Testimony Privilege

The adverse testimony privilege, when applicable, protects spouses from being compelled to testify against one another.  *Trammel v. United States*, 445 U.S. 40, 53 (1980).  It applies to all adverse testimony, including testimony regarding criminal acts and communications made in the presence of a third party.  *See id.* at 51.  The policy goal underlying the adverse testimony privilege is "to protect viable marriages from the potentially irreparable rifts that may result from compelled disclosure of commentary before a tribunal," *In re Witness Before Grand Jury*, 791 F.2d 234, 237 (2d Cir. 1986), and to foster "the harmony and sanctity of the marriage relationship." *Trammel*, 445 U.S. at 44.

Only the witness spouse may refuse to testify adversely.  *Trammel*, 445 U.S. at 53.  The accused may not invoke the privilege to prevent her spouse from voluntarily testifying against her.  *Id.* (modifying the privilege from one which could previously be asserted by either spouse).  As suggested by its name, the privilege applies almost exclusively in criminal proceedings "to testimony that 'disfavors the other spouse's *legal interests in the very case* in which the testimony is offered.'"  *United States v. Premises Known as 281 Syosset Woodbury Rd.*, *Woodberry, N.Y.*, 71 F.3d 1067, 1070-71 (2d Cir. 1995) (internal citations omitted) (emphasis in original).

#### B.    Confidential Marital Communications Privilege

The confidential marital communications privilege, as its name indicates, recognizes that a private communication between spouses is privileged.  *Blau v. United States*, 340 U.S. 332, 333 (1951).  It protects "all private statements between spouses" in an attempt to assure that those statements "will be forever free from public exposure." *In re Witness Before Grand Jury*, 791 F.2d at 237.  The policy basis for this privilege is to protect marital confidences, which the Court has called "so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails."  *Wolfle v. United States*, 291 U.S. 7, 14 (1934); *see also Grand Jury Subpoena of Ford v. United States*, 756 F.2d 249, 252 (2d Cir. 1985) (referring to the privilege as "venerated").

This privilege applies when (1) there was a valid marriage at the time the communication occurred, *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. at 157 (internal citations omitted), (2) the communication in question is a "communication" as opposed to an act, *Id.*, and

HAFETZ & NECHELES LLP

(3) the communication was made in confidence.  *Pereira v. United States*, 347 U.S. 1, 6.

Assuming each of these three elements is satisfied, either spouse can assert the privilege to block the testimony of the other.  *United States v. Premises Known as 281 Syosset Woodbury Rd.*, 862 F. Supp. 847, 853 (E.D.N.Y. 1994), *aff'd sub nom.,United States v. Premises Known as 281 Syosset Woodbury Rd., Woodbury, N.Y.*, 71 F.3d 1067 (2d Cir. 1995).

### 2.   The Cases Cited by the Government Are Inapposite

The Government cites two cases in support of its claim that the marital privilege protects only testimony.  The two cases do not stand for that proposition.

Indeed, the first case cited by the Government, *United States v. Lefkowitz*, 618 F.2d 1313, 1318 n.8 (9th Cir. 1980), specifically recognizes the existence of a confidential marital communications privilege but states that it does not apply in that case because there "was no communicative utterance or expression [from the husband to the wife] … and therefore her divulgence [of certain information] … did not violate the confidential marital communications privilege."  *Id*. at 1318.  Thus, the Government's own case establishes the existence of the confidential marital communications privilege.

The Government, however, points specifically to a footnote in this case which states that this privilege may not be constitutionally grounded so that secondary sources of information obtained through information protected by the marital privilege would not be "tainted."  The Government's specific citation of this footnote appears to indicate that it is the Government's position that it is free to violate Mr. Reichberg's rights and intrude upon his confidential marital privilege without any repercussions since any evidence the government obtains as a result of its review of confidential marital communications cannot be suppressed.  We submit that if this is the Government's position it is very troubling, and this is one reason we ask for a specific order from the Court, directing the Government not to review these confidential communications.

Moreover, we believe that the position set forth in the footnote in *Lefkowitz* is contrary to the law in the Second Circuit.  We have not had the time to research this extensively but in *In Grand Jury Subpoena of Ford v. United States,* 756 F.2d 249 (2d Cir. 1985), the Second Circuit upheld a grand jury subpoena which compelled spousal testimony about the conduct of another spouse, because the government had given a binding promise that neither the testimony nor any fruits of the testimony would be used against the spouse.  This case, and the First Circuit case cited therein, stand for the proposition that if the confidential marital communications privilege is violated by the Government, fruits of that violation must be suppressed.  Thus, we ask that the Government be asked which, if any, Government agents have reviewed confidential marital communications and which communications they have reviewed, to determine whether a taint hearing is necessary.

The second case cited by the Government is no more helpful to their position.  In *United States v. Squillacote*, 221 F.3d 542, 561 (4th Cir. 2000) the Fourth Circuit considered the issue of whether *Kastigar*-like protections would be required in cases involving testimony compelled over the assertion of non-constitutional privilege.  The issue in *Squillacote* involved a

# HAFETZ & NECHELES LLP

psychotherapist privilege.  Using an analogy, the Court discussed marital privileges and stated that an adverse spousal testimony privilege or marital communication privilege may be compelled if the prosecutor gave an adequate promise that the information would not be used against the other spouse.  This analogy was *dicta* and the two cases cited by the Fourth Circuit involved a spouse asserting testimonial privilege, not confidential marital communications.  Thus, the one sentence of *dicta* in *Squillacote* that testimony about confidential marital communications may be compelled if the spouse is given use immunity is irrelevant.

### Conclusion

The law is thus clear that confidential marital communications may not be reviewed by the Government.  The Government should therefore be immediately ordered to stop reviewing these communications and should be required to state whether any government agent has reviewed any such communications contained on any seized device.

Respectfully submitted,

/s/

Susan R. Necheles

cc:    All Parties (by e-mail and ECF)

4