

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 10, 2018

**BY ECF and EMAIL**

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   **United States v. Grant, et al.**
>       **S2 16 Cr. 468 (GHW)**

Dear Judge Woods:

The Government respectfully writes in opposition to the defendant Jeremy Reichberg's motion asking the Court to bar all "member[s] of the Government, whether they are part of the 'prosecution team,' or not," from reviewing alleged confidential marital communications contained on the single cellphone remaining under review, Subject Device-19. (Reichberg Letter dated April 6, 2018, Dkt. No. 181 ("Reichberg Ltr").) That motion should be denied. The Government is cognizant of the confidential marital communications privilege and the protection it affords marital communications. Under the governing caselaw, no taint team is needed to segregate materials subject to this privilege; the prosecution team may properly review the cellphone at issue to determine whether the privilege applies to communications stored there.

*Factual Background*

As the Court knows, on or about June 20, 2016, the Government seized approximately 35 electronic devices during a judicially-authorized search of Reichberg's home (the "Reichberg Electronic Devices"). In December 2017, the Government obtained a renewed warrant to search the Reichberg Electronic Devices (the "Renewed Warrant"), and largely completed that review by March 6, 2018, with the exception of one item, Subject Device-19. Due to encryption hurdles, information was forensically extracted from Subject Device-19 on or about February 28, 2018.

On March 15, 2018, counsel for Reichberg asked the Government to halt its review of Subject Device-19 and create a taint team to review Subject Device-19 for communications subject to both the attorney-client privilege and the confidential marital communications privilege. Although the Government had already substantially reviewed Subject Device-19 by this time, the Government stalled the review in order to have a taint team attorney, separate from the prosecution team, screen Subject Device-19 for potential attorney-client communications. None were found. With respect to Reichberg's request to employ a taint team to identify confidential marital communications contained on Subject Device-19, the Government determined that a taint team

Hon. Gregory H. Woods
April 10, 2018

was unwarranted under the governing caselaw.  On April 6, 2018, Reichberg's counsel moved the Court to stop any review at all of potentially privileged confidential marital communications, whether by the prosecution team or a taint team.

### *Applicable Law*

Federal Rule of Evidence 501 provides that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court."  "Two distinct evidentiary privileges have been recognized as arising from the marital relationship— a right to bar all testimony of one spouse adverse to the other, and a more limited privilege applicable only to confidential marital communications."  *United States v. Termini*, 267 F.2d 18, 19 (2d Cir. 1959).

Only the marital communications privilege is implicated by the defendant's motion.  "[T]he confidential marital communications privilege [] is narrower than the adverse spousal testimony privilege and seeks only 'to protect the intimacy of private marital communications,' but it can be invoked by either spouse to prevent the revelation of such communications."  *United States v. Premises Known as 281 Syosset Woodbury Rd.*, 71 F.3d 1067, 1070 (2d Cir. 1995) (*quoting In re Grand Jury Subpoena*, 755 F.2d 1022, 1027 (2d Cir. 1985), *vacated on other grounds sub nom. United States v. Koecher*, 475 U.S. 133 (1986)).  "There are three prerequisites for assertion of the marital communications privilege: (1) a valid marriage at the time of the communication; (2) the privilege applies only to utterances or expressions intended by one spouse to convey a message to the other; and (3) the communication must have been made in confidence, which is presumed."  *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 157 (S.D.N.Y. 2011) (internal citations and quotation marks omitted).

"Courts routinely emphasize that the privilege must be constructed narrowly because it inhibits the truth-seeking function of trials."  *United States v. Pugh*, 162 F. Supp. 3d 97, 111–12 (E.D.N.Y. 2016) (collecting cases).  "Despite the importance of these privileges, the Supreme Court has held that they must be narrowly construed because they are in derogation of the search for truth which lies at the heart of a criminal trial."  *United States v. Byrd*, 750 F.2d 585, 589 (7th Cir. 1984) (discussing the marital communications privilege).  Furthermore, the confidential marital communications privilege is subject to a crime-fraud exception.  *United States v. Estes*, 793 F.2d 465, 468 (2d Cir. 1986) (citing concurring authority from four other Circuits and confirming recognition of a "partnership in crime" exception to the confidential communication privilege).

### *The Prosecution Team Can Properly Review and Set Aside Protected Marital Communications*

The Government agrees with defendant Reichberg that under the Fourth Amendment a reasonable review of seized electronic data for responsive communications generally requires that communications subject to a privilege be set aside.  The Fourth Amendment, however, does not

Hon. Gregory H. Woods
April 10, 2018

require that a wholly distinct taint team conduct every review; the prosecution team can properly set aside any protected communications.

Reichberg argues that the Government cannot review marital communications on a cellphone when conducting a judicially-authorized search, but that assertion is wholly unsupported by caselaw. Reichberg likewise presents no case law in support of his claim that the Government was obligated to employ a taint team to review Subject Device-19. Nor did anything in the initial warrant for Reichberg's home, or the operative, Renewed Warrant require the Government to conduct a taint review for potentially privileged marital communications. The Government respectfully submits that neither case law nor the terms of the Renewed Warrant impose any such restrictions on the review of Subject Device-19.

The law requires taint teams when there is concern that exposure to privileged communications could unfairly advantage the prosecution. The paradigmatic example of this situation is a case involving communications with a defense attorney protected by the attorney client privilege. In that circumstance, a separate "taint" team is designated to cull out privileged information in order to avoid a situation where the prosecution is unfairly advantaged, or a privilege holder unfairly prejudiced, by exposing prosecutors to Sixth Amendment-protected, or defense-strategy, information.

No such concern is at play for marital communications. The marital communications privilege is a purely evidentiary one that does not implicate constitutional concerns. *See, e.g.*, *United States v. Lefkowitz*, 618 F.2d 1313, 1318 n.8 (9th Cir. 1980) (rejecting argument that marital communications privilege is grounded in Constitution and therefore subject to "taint" analysis). A communication subject to it may not be admitted at trial, but when a privilege is not constitutionally grounded, courts have refused to conduct "taint" analysis, or to suppress evidence derived from review of privileged materials. *See id.* ("Because we reject [defendant's] argument that the marital privileges are somehow constitutionally grounded in, among other locations, the Fourth Amendment, we doubt that a secondary source of information obtained through information protected by the confidential marital communications privilege would in any way be 'tainted.'"); *United States v. Marashi,* 913 F.2d 724, 731 n.11 (9th Cir. 1990) (discussing the marital communications privilege and noting that "no court has ever applied the [fruit of the poisonous tree] theory to *any* evidentiary privilege and ... we have indicated we would not be the first to do so.") (emphasis in original); *cf. United States v. Squillacote*, 221 F.3d 542, 561 (4th Cir. 2000) ("because the privilege at issue here [psychotherapist's privilege] is not a constitutional one, the district court properly refused to suppress any evidence arguably derived from the government's interception of the two conversations with [defendant's] therapists"); *United States v. Nicholas*, 594 F. Supp. 2d 1116, 1118-19 (C.D. Cal. 2008) (holding that even a privileged confidential marital communication, relevant to the case, must be disclosed to a co-defendant because it could be admissible as impeachment material, among other things); *United States v. Robare*, No. 8:07-CR-373 (FJS), 2008 WL 2967632, at *4 (N.D.N.Y. July 25, 2008) (discussing marital privilege and holding that "the fruit-of-the-poisonous-tree doctrine does not apply in cases such as this, where the defendant asserts an evidentiary privilege that is not constitutionally-derived");*United States v. Irons*, 646 F. Supp. 2d 927, 957-58 (E.D. Tenn. 2009) (denying defendant's motion to "exclude any other evidence gained by the government, including that evidence gained as a direct

3

Hon. Gregory H. Woods
April 10, 2018

result of government agents listening to the marital communications in question" because the "fruit of the poisonous tree" doctrine has no application where the privilege does not "enjoy any constitutional basis"); *United States v. Harder,* No. CR 15-1, 2016 WL 7647635, at \*6 (E.D. Pa. Apr. 18, 2016) (declining to "suppress any fruits of the Government's review of the privileged emails," even in the attorney-client privilege context).

Since there is no derivative use or "fruits of the poisonous tree" concern, when the Government collects evidence pursuant to a search warrant, the prosecution team can properly review that evidence, even if it might contain spousal communications. Spousal communications that appear unresponsive to the warrant have been or will be set aside as unresponsive and play no role in the case. Those that appear responsive will likewise be set aside if, on further review, the privilege applies. Such steps comport with the Fourth Amendment requirement that searches be reasonable in their execution.[1]

None of Reichberg's authorities are to the contrary. Although he relies on *Grand Jury Subpoena of Ford v. United States*, 756 F.2d 249 (2d Cir. 1985) (hereinafter "*Ford*"), that case is inapposite. *Ford* involved the Government's ability to *compel*, over specific objection, and utilize adverse spousal testimony, which is protected by a different privilege, by granting use-fruits immunity to the spouse. The *Ford* court held that the Government could force a defendant's spouse to testify where "the government's sole purpose in seeking appellant's testimony is to obtain further evidence to support a superseding indictment against [the defendant-spouse's] alleged co-conspirators," and not the defendant-spouse. *Id*. at 253-54. As the *Squillacote* court noted, considering *Ford*, this is an entirely different issue "because the government's right to compel testimony in the face of a claim of privilege is the issue at the heart of *Kastigar*, [so] its protections do not apply in cases where there is privileged evidence, but no compelled testimony." *Squillacote*, 221 F.3d at 560. In this case, the Government is not seeking to force any party to participate in a criminal prosecution nor to intentionally breach any privilege, so *Ford* is inapplicable here. In fact, *Ford* is consistent with the Government's view, as the Second Circuit recognized in that case that "the marital privilege, unlike that against self-incrimination, is derived from the common law *and has no equivalent Constitutional stature*." 756 F.2d at 255 (emphasis added). That determination is therefore consistent with the proposition, supported by *Lefkowitz* and *Squillacote*, that no "fruit of the poisonous tree" or derivative-use analysis applies to evidence potentially implicating the marital communications privilege, and accordingly, that such review may properly be conducted by the prosecution team.

---

[1] It bears mention that review of communications potentially subject to the confidential marital communications privilege is particularly unlikely to lead to derivative new evidence in this case. Given the stage the investigation already has reached, any relevant spousal communications are likely to relate to already-charged conduct. Any "taint" concern therefore lacks not only a legal basis but a factual basis as well.

4

Hon. Gregory H. Woods
April 10, 2018


For these reasons, the motion should be denied.  Neither the law nor the terms of the Renewed Warrant require the Government to employ a taint team to cull out confidential marital communications from a judicially-authorized search.  That review can properly be conducted by the prosecution team, who will set aside communications protected by the marital communications privilege.


                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney

                    By:    __/s/_____
                              Martin S. Bell
                              Jessica Lonergan
                              Kimberly J. Ravener
                              Assistant United States Attorneys
                              (212) 637-2463/1038/2358


cc:    All Counsel (by ECF and email)

5